**WOODS, Housing Expediter, v. WHITE-HOUSE.**

**Civil Action No. 3504.**

United States District Court
W. D. New York.
Feb. 22, 1949.

Slyvan D. Freeman, of New York City (William S. Hauser, of New York City, of counsel), for plaintiff.

Lomenzo & Salzman, Rochester, N. Y., for defendant.

BURKE, District Judge.

Plaintiff brings this action to recover double damages under the authority of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and for an order requiring the defendant to make refund to the tenant of all overcharges in rent from October 1, 1942, to the date of the complaint, and also for a permanent injunction restraining the defendant from further violation of the Rent Control Regulations. The answer is a general denial and two separate and distinct defenses: (a) Statute of limitations; (b) that the overcharges were inadvertently made and without intent to violate the Act. The premises are half of a double house originally registered on October 23, 1943, with the statement that on March 1, 1942, the rental for the premises was $35 per month. Rentals for dwellings in the Rochester Defense-Rental Area were fixed as of that date. The tenant, Eugene S. Keeling, and his wife resided in the premises from 1930 continuously until December 31, 1947. Rent was paid to Thomas J. Whitehouse, father of defendant, up to September 1, 1942. On that date the tenant, upon the demand of the defendant, paid $45 per month and continued to pay at that rate until December 31, 1947, when he vacated the premises. About 1935 Keeling went into the business of selling antique furniture and repairing and refinishing furniture. The entire ground floor, with the exception of a corner of one room which was used as a kitchen, was thereafter mainly used to carry on this business. The first floor consisted of a large front room about 22' x 17' which had originally been divided into a livingroom and dining room. There was a shed in the rear about 10' x 25' and a storeroom on the side of the shed about 10' x 25'. In the corner of the front room there was a stove and a sink screened off from the rest of the room which served as a kitchen where Keeling and his wife prepared their meals. The rest of the room was occupied by furniture which was offered for sale. The shed was used as a workshop by Keeling for repair work and refinishing furniture. The storeroom was used for storing furniture. The second floor consisted of a front room, a bedroom, and a bath room, which corresponded in area to the large front room on the first floor. The upper front room was furnished to make it useable as a living room. Some of the furniture in this room was also offered for sale. The bedroom, bath room, and corner of the front room on the first floor, which was used for a kitchen, were the only parts of the house used exclusively for living purposes. On the front of the house a large sign was displayed advertising antiques and furniture repair. Antique furnishings were displayed in the front windows of the premises to attract prospective buyers. The tenant's name was listed in the classified telephone directory and in the City Directory under the name of Keeling's Antique Studio. Antique furniture was sold by the tenant on the premises. Entrance to the front room on the ground floor was gained merely by walking in, as in any commercial establishment, without any requirement of knocking at the door. The

tenant's sole income, with the exception of a navy pension amounting to $31 per month, was derived from the business conducted on the premises.

I resolve the question whether the premises were housing accomodations under the control of the Office of Price Administration, or its successor, by resort to Interpretations issued by the Office of Price Administration on July 1, 1945, (issued previously in the Interpretation Series on May 15, 1943). Under those interpretations the controlling factor is the predominant use of the premises. Since the business and dwelling portions are not separable, the two portions are to be treated as a unit for the purpose of determining whether the property is subject to regulation. The material test of predominant use is made on space basis. If the predominant part of the space is used for business purposes, the property is not subject to regulation. The first floor consisting of a front room, the shed, and the store room, occupied 874 square feet of space. This area with the exception of the corner used as a kitchen was used almost exclusively by the tenant for business purposes. The upstairs area measured 374 square feet and even part of that area contained furniture which was offered for sale. Therefore, on a space basis the use of the building was predominantly for business purposes and did not come under the control of the Office of Price Administration, or its successor. The registration of the premises as a dwelling filed on October 23, 1943, does not estop the defendant from now claiming that it was used for commercial purposes. It indicates no more than that the owner at that time considered the use to be a housing accommodation. But whatever he thought it to be does not change the facts as established by the evidence. It will probably not be disputed that the Interpretations used by the Office of Price Administration at the time of the registration of these premises were not commonly known and not readily ascertainable. Having decided that the premises do not come under the provisions of the Emergency Price Control Act of 1942, as amended, I do not consider the other defenses asserted.

Judgment for defendant. No costs.